**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASEY'S DISTRIBUTING, INC., on Behalf of Itself and All Others Similarly Situated,**

**Plaintiff,**

**-against-**

**NATIONAL FOOTBALL LEAGUE, et al.,**

**Defendants.**

**1:22-cv-03934 (ALC) (JLC)**

**<u>OPINION AND ORDER</u>**

**ANDREW L. CARTER JR., United States District Judge:**

Plaintiff Casey's Distributing, Inc. ("Casey's" or "Plaintiff") on behalf of itself, and all others similarly situated, brings this action against Defendants National Football League Properties, Inc. ("NFLP"), NFL Enterprises ("NFLE"), each of the NFL member football teams ("NFL Teams"), and Fanatics, Inc. ("Fanatics") (collectively, "Defendants") alleging that NFLP's Online Distribution Policy ("ODP"), which requires any company that sells NFL Licensed Products through certain online outlets to be preapproved by NFLP, is unlawful. Plaintiff further alleges that enforcement of this policy restricts the Plaintiff from selling NFL Licensed Products on third party online marketplaces ("TPOMs") and confers market power on NFLP's chosen licensees, like Fanatics, in violation of antitrust law. In the instant motion, Defendants NFLP and affiliated entities and Fanatics move to dismiss the Second Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable antitrust claim.

For the reasons set forth below, this Court finds that Plaintiffs' SAC is not sufficient to

state an antitrust claim. The Plaintiffs have failed to meet their burden in the SAC to allege sufficient facts that suggest that they have suffered an antitrust injury. Because NLFP sells trademarked products, it is allowed to designate certain distributors, and not others, to be authorized retailers. Designating Defendants, rather than Plaintiff, as authorized retailers does not violate antitrust laws. Therefore, Defendants' motion to dismiss is hereby **GRANTED**.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts, which are set forth more fully in the SAC. ECF No 80. Plaintiff brings this action seeking equitable relief under Sections 1, 2 and 3 of the Sherman Act, 15 U.S.C. §§ 1-3, and Section 3 and 16 of the Clayton Act, 15 U.S.C. § 14 on behalf a similarly situated class. *Id*.

### I. Licensed Sports Products Industry

As part of the NFL Licensed Sports Products industry, trademark owners (e.g., individual sports teams) license their marks to licensees who make products that are sold to distributors, who retail the products to consumers or re-sell the products to retailers, who then re-sell them directly to consumers. SAC at ¶ 50. Rather than competing independently, the NFL Teams have formed a "cartel" to jointly organize the licensing of their marks (as a single group) through Defendant NFLP. *Id*. Firms occupying upstream positions in the supply chain as manufacturers or trademark owners also act as retailers selling directly to consumers. *Id*. ¶ 51. NFLP serves as the representative of the NFL and its 32 constituent member teams for the licensing of their logos, trademarks, emblems, or other indicia ("Intellectual Property"). *Id*. ¶ 53. In this role, the NFLP controls the Intellectual Property of the NFL and its constituent NFL Teams, including merchandising and licensing of NFL products that bear NFL Intellectual Property. *Id*. For that reason, the NFLP maintains all or substantially all control over how NFL Licensed Products reach consumers, and it does so for the NFL itself and for each of the NFL's constituent member

teams. *Id*.

**II. Alleged Conduct**

In 2015, the NFLP announced it was implementing an Online Distribution Policy ("ODP") restricting NFL Licensed Product sales on TPOMs by purportedly licensees to arrange that any retailer selling on a TPOM first be approved by NFLP. *Id*. ¶ 89. The proffered reason was "to ensure that such retailers maintain control over, and responsibility for, their e-commerce transactional environment." *Id*. Plaintiff and similarly situated companies, who were not parties to the ODP, continued to purchase NFL Licensed Products from licensees legitimately, without being informed at the time of the ODP nor the limitations on their lawful purchases. *Id*. ¶ 94.Plaintiff alleges that Defendants conspired to allocate the market for NFL Licensed Products on Amazon and other TPOMs and unlawfully leveraged their market power over licensees to force those licensees to boycott smaller retailers who sold NFL Licensed Products on or through TPOMs. *Id*. ¶ 98.

In 2017, Plaintiff began selling on Walmart.com where sales steadily grew until 2019. *Id*. ¶ 104. In January 2019, Fanatics agreed to be the exclusive seller of NFL products on Walmart.com, when all or nearly all of Plaintiff's products were removed from the website. *Id*. On October 8, 2020, Casey's supplier and wholesaler/licensee, WinCraft, allegedly said during a call that it was acting on Fanatics' behalf and demanded that Casey's remove products from Amazon that Casey's lawfully bought from WinCraft. *Id*. On March 24, 2021, Amazon notified Casey's that it must become an NFL-authorized seller to continue selling NFL Licensed Products on Amazon due to a "new agreement with the NFL." *Id*. ¶ 107. NFLP later imposed and implemented new restrictions on which entities could sell NFL Licensed Products on Amazon's TPOM, as manifested in the NFLP's Approved Marketplace Retailer Application ("AMRA"). Furthermore, on May 24, 2021, Logo Brands allegedly demanded that Casey's remove products

that Casey's listed on Amazon due to a "new" "contractual agreement" that Logo Brands "just signed with Fanatics which prevents 3rd part[ies] from selling Logo Brands products on Amazon." *Id*. ¶114(a). On June 3, 2021, Casey's received a demand from Logo Brands for Casey's to remove all of its listings on Amazon due to an "agreement" signed between Logo Brands and Fanatics. *Id*. ¶114(d).

## III. Alleged Relevant Market

Plaintiff alleges that the "relevant product market is the TPOM retail market (including, without limitation, direct sales to Amazon for resale) for Products bearing the Intellectual Property of the NFL or any NFL Team" ("NFL Licensed Products"). *Id.* ¶ 143. Plaintiff argues that consumers of NFL Licensed Products who would be purchasers from Plaintiff Casey's and the Class members have "fan loyalty and do not deem licensed products from other athletic leagues or other types of licensed products to be reasonable substitutes." *Id*. ¶ 145. Plaintiff further alleges that "[t]here is neither reasonable interchangeability nor cross-elasticity of demand for non-NFL Licensed Products or other types of licensed products," and that brick-and mortar sales as well as other online sales do not compete with nor are adequate substitutes for TPOM retail sales. *Id*. ¶¶ 73-87, 145.

## IV. Alleged Injury

Plaintiff alleges continuing collusion between horizontally competing retailers—the NFL Defendants, Fanatics, and other retailers identified throughout this SAC (for example, FOCO and Boelter Brands, the latter being owned by Logo Brands)—of group boycotting Casey's and the Class (also Defendants' horizontally competing retailers) from retailing NFL Licensed Products on TPOMs. *Id.* ¶ 204. Plaintiff also alleges continuing collusion between horizontally competing retailers—the NFL Defendants and Fanatics—of group boycotting Casey's and the Class (also Defendants' horizontally competing retailers) from selling NFL Licensed Products

directly to Amazon (not on Amazon). *Id.* ¶ 206. Finally, Plaintiff alleges continuing collusion between horizontally competing licensees—Fanatics and other licensees identified throughout this SAC (for example, Logo Brands)—of refusing to sell NFL Licensed Products to Casey's and the Class. *Id.* ¶ 208.

**PROCEDURAL HISTORY**

On November 13, 2022, Plaintiff filed the original Complaint in this action. ECF No. 1. On September 22, 2022, Plaintiff filed the FAC. ECF No. 52. On October 6, 2023, NFL Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 62-65. On December 6, 2023, Plaintiff filed his opposition to the instant motion to dismiss. ECF No. 66. On January 12, 2024, Defendants filed its reply memorandum in support of the motion to dismiss. ECF Nos. 67-68. On September 30, 2024, the Court granted Defendants' motion to dismiss. ECF No. 76.

On July 30, 2025, Plaintiffs filed the SAC. ECF No. 80. On October 8, 2025, Defendants filed their motion to dismiss. ECF Nos. 85, 87. On December 5, 2025, Plaintiffs filed their Opposition. ECF No. 90. On December 23, 2025, Defendants filed their Replies. ECF Nos. 92, 93.

**LEGAL STANDARD**

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663. Indeed, deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

Antitrust claims in particular must be reviewed carefully at the pleading stage because false condemnation of competitive conduct threatens to "chill the very conduct the antitrust laws are designed to protect." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004) (internal quotation marks omitted). However, "[t]here are no heightened pleading requirements for antitrust cases," *Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, No. 00CIV5008(CM)(LMS), 2002 WL 1205740, at *2 (S.D.N.Y. Mar. 15, 2002) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001)), and "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly," *Todd*, 275 F.3d at 198 (quoting *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

## DISCUSSION

This Court finds that the Plaintiff has failed to allege facts sufficient to plausibly plead an

antitrust injury. On a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the Plaintiffs' favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Indeed, "[t]hreadbare recitals of the elements of a cause of action" and conclusory allegations are not presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Disregarding legal conclusions couched as fact, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). A claim for relief is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Antitrust Standing**

Standing is "a threshold, pleading-stage inquiry," and a complaint that fails to allege standing must be dismissed. *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75–76 (2d Cir. 2013) (quoting *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc)). An antitrust plaintiff must establish constitutional standing under Article III as well as antitrust standing. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (hereinafter, "AGC"); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009). To plead antitrust standing, a plaintiff must allege more than just an injury causally linked to unlawful conduct. *Gatt*, 711 F.3d at 76. The Supreme Court has identified several factors that courts should consider in determining whether a plaintiff has antitrust standing: (1) the causal connection between the violation and the harm; (2) the presence of an improper motive; (3) the type of injury and whether it was one Congress sought to address; (4) the directness of the injury; (5) the speculative nature of the damages; and (6) the risk of

duplicative recovery or complex damage apportionment. *AGC*, 459 U.S. at 537–44, 103 S.Ct. 897.

**Antitrust Injury**

The Second Circuit has applied the AGC factors using a two-pronged analysis. First, a plaintiff must allege that it suffered antitrust injury.[1] To establish antitrust injury, a plaintiff must allege facts showing that it suffered "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Courts in this Circuit employ a three-step analysis to determine whether a plaintiff has plausibly alleged an antitrust injury. *Gatt*, 711 F.3d at 76. First, the plaintiff must identify the practice complained of and the reasons the practice is or might be anticompetitive. *Id*. Second, the court must identify the actual injury alleged by the plaintiff. *Id.* Third, the court must compare the anticompetitive effect of the practice at issue to the actual injury alleged by the plaintiff. *Id.*

**Step 1**

As the first step of our three-part analysis, the Plaintiff must allege that the Defendants have engaged in unlawful anticompetitive conduct. *Port Dock and Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 122 (2d Cir. 2007). "The bar for such a showing is a low one." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F. 3d 57, 62-63 (2d Cir. 2019) (internal quotations and citations omitted).

The problem with Plaintiffs' complaint is it fails to adequately allege antitrust injury. In the prior Opinion, the Court ordered Plaintiffs to address numerous deficiencies; Plaintiffs have failed

---

[1] Since the Court finds that the plaintiff failed to adequately plead antitrust injury, the Court will not address whether the Plaintiffs are efficient enforcers. Moreover, the Court will not address the Defendants' other arguments for dismissal.

to do so, merely listing "several independent categories of antitrust injury." SAC ¶ 204. However, none of these categories are new and were previously alleged. Plaintiffs' claim they were in fact injured by Defendant's refusal to continue to sell trademarked NFL merchandise to Plaintiffs. But this is not an injury that the antitrust laws were designed to redress. Although the alleged scheme excludes Plaintiffs from purchasing from some licensees, the scheme does not, as alleged, harm competition. Antitrust law protects competition not competitors. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005).

Plaintiffs claim the NFL Defendants have a monopoly over deciding who to license for the manufacture of their products. This monopoly existed before the scheme and still exists--lawfully. The fact that the NFL Defendants and Fanatics–both upstream from Plaintiffs as trademark owners and manufacturers–are vertically integrated downstream, meaning they also participate as retailers, does not mean that agreements that have some effect on the TPOM are anticompetitive. In fact, Plaintiffs claim that the NFL Defendants' scheme is tethered to their decision making further up the stream of commerce–a unilateral, vertical, decision to refuse to allow sell manufacturers to sell unauthorized retailers, who wish to sell on TPOMs.[2] Plaintiffs fail to sufficiently allege anything anticompetitive about the NFL Defendants' insistence that only authorized retailers sell licensed products on TPOMs.

In addition, it is not clear how far this alleged insistence from the NFL Defendants reaches. Plaintiffs suggest that some NFL licensed manufacturers are not subject to the ODP and have sold licensed NFL goods to Plaintiffs for retail sales on TPOMs. If other licensees are willing to sell to Plaintiffs, what is the extent of the alleged cartel? A truly anticompetitive agreement to severely limit competition would have, as an anticipated result, higher prices for

[2] Plaintiffs agree that they never even applied to be authorized retailers.

consumers, not simply higher prices for a terminated trading partner.

i. **Step 2**

The second step of our three-part analysis requires that a court "look to the ways in which the plaintiff claims it is a worse position as a consequence of the defendant's conduct." *Gatt Communs., Inc., v. PMC Assocs., L.L.C.*, 711 F.3d 68, at 76 (2d Cir. 2013). (internal citation and quotations omitted). Here, the Plaintiffs allege that the anticompetitive agreements have caused the Plaintiffs to have to pay significantly elevated and anticompetitive prices to purchase NFL Licensed Products from Licensees and other increased costs. SAC ¶¶121, 123-36. Plaintiffs also allege that the anticompetitive scheme resulted in the "removal of scores of NFL Licensed Products from TPOMs that has caused dramatic decreases in revenue for Casey's and the Class members, increases in costs paid to remove NFL Licensed Products and handle logistics of such removal, and the evisceration of the assets, investments, costs, and overall marketing devoted by Casey's and the Class members to have established their presence, especially to consumers, on TPOMs to have retailed NFL Licensed Products." *Id*.

ii. **Step 3**

The third and final step of our three-part analysis requires that the court "compar[e]" the "anticompetitive effect of the specific practice at issue" to "the actual injury the plaintiff alleges." *Port Dock*, 507 F.3d at 122. Here, the antitrust injury is lacking because Casey's purported injury does not match the anticipated anticompetitive effect of the ODP.

While Plaintiffs have been harmed by the actions of the defendants, the law protects competition, not competitors. The anticipated effect of the allegedly anticompetitive scheme would be higher prices for consumers. There is nothing in the complaint adequately alleging that consumers must pay higher prices as a result of the alleged scheme. While it appears that consumers who insist on buying from unauthorized retailers, like plaintiff, would pay higher

prices, there is no adequate allegation that consumers, in general, would be forced to pay higher prices as a result of the scheme.[3]

This Court therefore finds that the Plaintiff's allegations fail to demonstrate antitrust injury "of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' acts unlawful." *Brunswick*, 429 U.S. at 489.[4] Therefore, Casey's does not have antitrust standing to pursue these claims.[5]

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED** and the Complaint is dismissed without prejudice. The Clerk of Court is respectfully directed to terminate all pending motions. The Parties should file a joint status report by October 14, 2026.

**SO ORDERED.**

**Dated: September 29, 2026**
**New York, NY**

**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[3] Indeed, Casey's "would have suffered the identical loss" whether the ODP is anticompetitive or procompetitive. ECF No. 63 at 13.

[4] In addition, Plaintiff claim that Amazon entered into an agreement with the NFL that prevents unauthorized retailers from selling NFL licensed goods on its website. Plaintiffs do not adequately allege how this is unlawful. Plaintiffs fail to adequately allege how Fanatics exclusive distributorship agreement with Wal-Mart is unlawful.

[5] Since the Court has found that Casey's has failed to adequately allege antitrust injury, the Court does not address whether plaintiff and the class are efficient enforcers. Nor does the Court directly address Defendants' other arguments for dismissal.